No. 2--00--0462 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

In
 
re
 MARRIAGE OF ) Appeal from the Circuit Court

MARCELLA A. LETSINGER, ) of Winnebago County.

)

Petitioner-Appellee and )

Cross-Appellant, )

)

and ) No. 94--D--1297

)

MARVIN L. LETSINGER, )

) Honorable

Respondent-Appellant and ) Patrick L. Heaslip,

Cross-Appellee. ) Judge, Presiding.

_________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Respondent, Marvin L. Letsinger, appeals the judgment of the circuit court of Winnebago County increasing child support and awarding attorney fees to petitioner, Marcella A. Letsinger.  Marcella cross-appeals from the amount of the trial court’s award of attorney fees and from the denial of her motion for contempt.  We affirm as modified and remand with directions. 

FACTS

The parties' marriage was dissolved on August 11, 1997.  The trial court awarded sole custody of the parties’ minor child, Shana, to Marcella and ordered Marvin to pay $145 per week in child support.  The judgment further required Marvin to pay $98 per week to Marcella for maintenance until July 18, 1999, and to provide medical insurance continuation coverage (COBRA) for Marcella until the coverage expired or she became eligible for group insurance coverage, whichever occurred first.  The trial court awarded possession of the marital residence to Marcella.  Marcella retained 60% of the equity in the marital residence, and Marvin retained the remaining 40%.  The judgment allocated the marital debts between the parties, each to assume sole responsibility for, and hold the other harmless from, the assigned debts.  Marvin’s attorneys were granted judgments against him for attorney fees totaling $5,304.  Apparently, after the attorneys were granted judgments against Marvin, they filed liens on the marital home.  On October 27, 1997, following Marcella’s motion to reconsider, the court modified the judgment, awarding Marcella all of the equity in the marital residence.  

On November 3, 1997, Marvin filed a bankruptcy petition and was discharged of the marital debts allocated to him in the judgment of dissolution.  On November 25, 1998, Marcella filed an amended motion for relief and contempt.  Marcella alleged that Marvin’s discharge of the marital debts constituted a substantial change in circumstances justifying an increase in child support.  Marcella also sought a contempt finding against Marvin for his failure to pay her COBRA premiums from May 1998 as previously ordered by the court in the judgment of dissolution.

At the hearing on the motion, Marcella testified that the bankruptcy court discharged Marvin’s marital debts and he had failed to pay any of the debts that were discharged, including  (1) $5,304 in attorney fees to Marvin’s former attorneys; (2) $3,103 in attorney fees to Marcella’s attorney; (3) $8,791 to Dr. Albasha; (4) $425 in income taxes; (5) $320 to Neuman & Company; and (6) $133 to Oman & Oman.  Marvin admitted that he had made no payments on the debts allocated to him in the dissolution since he had filed for bankruptcy.

Marcella also testified that she could not afford to pay the marital debts that originally had been allocated to Marvin.  Her net take-home pay amounted to $1,466 a month, and her student loans exceeded $16,000.  Marcella had made some payments on her own debts, and she had paid some back taxes.  Marcella attempted to refinance the marital residence but was unable to do so because of the liens on the marital home.  She feared that she would lose the equity in her home as a result of the liens.  Marcella’s financial affidavit from February 1999 reflected monthly living expenses of $2,870, biweekly net earnings of $747, plus child support of $628 per month.  She paid $165 per month on debts totaling $62,725.  She also paid $214 in car payments per month.

Marcella further testified that Shana had become involved in a number of extracurricular activities that required her to purchase uniforms and equipment and to pay for camps.  Marcella stated that she had been forced to pay $600 for cheerleading camp and that Marvin had failed to pay his share of the camp fees within 30 days, as previously ordered by the court.  Marcella stated that her house payments, homeowner’s insurance, and automobile insurance had increased.  Marcella stated that she could not afford to pay for her daughter’s extracurricular activity expenses if forced to pay the debts discharged in bankruptcy by Marvin.

Regarding her health insurance, Marcella stated that she did not become eligible to receive health insurance coverage until July 1999 due to a preexisting condition.  Since May 1998, Marcella had been paying the COBRA premiums despite the judgment requiring Marvin to pay the premiums.  As of January 1999, the cost of premiums had increased from $233 per month to $243 per month.

Marvin testified that, although he had been earning $52,000 per year at the time child support was calculated, he was now earning $45,000 to $46,000.  Marvin admitted that because of his bankruptcy discharge he was no longer responsible for the marital debt allocated to him in the judgment.  Marvin’s financial affidavit reflected that, excluding child support and maintenance payments, he had monthly living expenses of $1,562.  Marvin admitted that he had not paid half of Shana’s extracurricular activity expenses. 

Following the hearing, the court found that the debts incurred by Marcella due to the discharge in bankruptcy by Marvin constituted a substantial change in Marcella’s circumstances warranting an increase in child support.  The court determined that the substantial debts precluded Marcella from providing for the child in the manner she would have been able to provide had Marvin not filed bankruptcy.  Determining that it would be appropriate to deviate from the statutory guidelines, the court increased the child support obligation to $182 per week.

Additionally, the court awarded to Marcella all of the reasonable attorney fees that she had incurred in connection with her petitions, finding that Marcella lacked the ability to pay her own attorney fees and that Marvin had the ability to contribute toward the fees.  The court further held Marvin in contempt of court for wilfully failing to comply with the previous court order that required him to pay $300 for Shana’s cheerleading expenses.  

Thereafter, Marcella filed a petition for attorney fees in the amount of $4,370.  Marvin objected to $890 of attorney fees, the majority of which were related to the removal of liens recorded against the marital residence by Marvin’s former attorneys.  The trial court agreed with Marvin and awarded Marcella $3,304 in fees.

The parties filed cross-motions for reconsideration.  Marvin asked the court to reconsider modifying the child support obligation and the award of attorney fees to Marcella.  Marcella requested that the court increase the amount of child support and find Marvin in contempt for failing to pay her COBRA premiums.

On April 4, 2000, the trial court found that a total of  $17,925 in marital debts had been shifted to Marcella as a result of Marvin’s bankruptcy judgment that "will impede [Marcella’s] ability to provide for the needs of herself and the minor child, thus, justifying a deviation from the statutory guideline."  The court added an additional sum of $97 per week to the statutory child support of $132 per week for a total of $229 per week, retroactive to November 25, 1998, the date on which Marcella filed her amended motion for relief and contempt.  The court arrived at $97 per week by dividing 184 weeks, the number of weeks between November 25, 1998, to June 1, 2002, the date Shana will graduate from high school, into $17,925, the amount of debt Marcella was now responsible for as a result of Marvin’s discharge.  The court found a child support arrearage of $6,596 as of March 10, 2000, by multiplying $97 by 68 weeks and ordered Marvin to pay the arrearage at a rate of $20 per week until paid in full.  The court denied Marcella’s request to reconsider ruling on the COBRA issue.  The court also denied Marvin’s motion to reconsider in its entirety.  Marvin appeals.  Marcella cross-appeals.

ANALYSIS

On appeal, Marvin first contends that the trial court lacked jurisdiction to modify the custody support.  Marvin asserts that the trial court was divested of jurisdiction by the failure to file a petition for modification of child support within 30 days of the final judgment of dissolution.  This argument lacks merit.  The trial court has inherent jurisdiction to modify child support in a dissolution proceeding upon a showing of a substantial change in circumstances, and the trial court need not expressly retain jurisdiction.  See 750 ILCS 5/510(a)(1)(West 1998).  Unlike other final orders, a child support order is always modifiable.  
In re Marriage of Petramale
, 102 Ill. App. 3d 1049, 1053 (1981). 

Marvin next contends that the trial court abused its discretion in increasing child support.  Specifically, Marvin maintains that the trial court erred in considering that the discharge of marital debt in bankruptcy constituted a substantial change in circumstances justifying an increase in support.  We disagree.

The modification of a child support award will be made only on proof of a substantial change in circumstances pursuant to section 510(a)(1) of the Illinois Marriage and Dissolution of Marriage Act  (Act) (750 ILCS 5/510(a)(1)(West 1998)). 
 A trial court’s determination that there has been a substantial change in circumstances to warrant the modification of child support lies within the discretion of the trial court and will not be disturbed absent an abuse of discretion.  
Villanueva v. O’Gara
, 282 Ill. App. 3d 147, 149 (1996).  A trial court abuses its discretion when no reasonable person would agree with the decision.  
In re Marriage of Mitteer
, 241 Ill. App. 3d 217, 224 (1993). 

The basis for determining a substantial change in circumstances is the needs of the child and the ability of the parents to respond to those needs.  Certainly, Marvin’s discharge of his marital debt affected the ability of both parents to respond to Shana’s needs.  The discharge in bankruptcy relieved Marvin of the legal obligation of paying certain debts, thereby affecting a significant change in his financial condition.  In response, an equal but opposing significant change occurred in Marcella’s financial condition.  Because Marcella is now responsible for a substantial debt due to Marvin’s discharge of that debt, Marcella’s expenses have so increased beyond what they were at the time of the dissolution that she must have more money to care for Shana properly.  Not only is Marcella spending her income paying a substantial increased amount of debt, but the evidence shows that the cost of providing shelter for Shana has increased, expenses in raising Shana have increased, and Marvin has greater income available as a result of the discharge of marital debt in bankruptcy.  We determine that the trial court properly considered the discharge of marital debt in bankruptcy to constitute a substantial change in circumstances to warrant an increase in child support.

We find additional support for our holding in courts of other jurisdictions.  In
 
Simpkins v. Simpkins
, 435 So. 2d 753, 754 (Ala. App. 1983), the husband filed a postdissolution petition for bankruptcy and was subsequently discharged of his marital debt.  The wife sought the modification of child support on the ground that since she was required to pay the husband’s former indebtedness her expenses had greatly increased beyond what they were at the time of the dissolution, and she needed an increase in child support.  The court held that, because she was required to pay the debt incurred by the husband’s discharge, it presented a material change in her financial situation to justify an increase in the award of child support.  On appeal, the court upheld the increase based on the husband’s discharge of debt in bankruptcy, which burdened the wife with additional debt.  
Simpkins
, 435 So. 2d at 754.  

Similarly in 
Coakley v. Coakley
, 400 N.W.2d 436, 441 (Minn. App. 1987), the court found that the releasing of marital debt obligations through bankruptcy caused damage to the former spouse’s financial circumstances, which created a substantial change in circumstances warranting an increase in child support.  See also 
Eckert v. Eckert
, 140 Wis. 2d 770, 424 N.W.2d 759 (App. 1988)(trial court’s finding of a substantial change in circumstances warranting modification of maintenance properly premised on consequences of husband’s discharge in bankruptcy of marital debt); 
In re Marriage of Clements
, 134 Cal. App. 3d 737, 746, 184 Cal. Rptr. 756, 761 (1982)(wife’s discharge in bankruptcy of debts, which then became obligation of husband, justified reduction of wife’s support); 
In re Danley
, 14 B.R. 493, 494 (Bankr. D. N.M. 1981)(husband’s bankruptcy can impact upon needs of wife and, thus, constitutes change in financial condition required for modification of support). 

Marvin argues that the trial court circumvented or infringed upon the jurisdiction of the bankruptcy court in modifying child support.  Congress gave priority to child support debt by carving an exception to the "fresh start" that bankruptcy affords debtors.  11 U.S.C. §523(a)(5) (1994).   Moreover, while the grant of a discharge in bankruptcy is the function of the bankruptcy court alone, the effect of the discharge can be determined by any court where it is properly raised.  
Avco Finance Co. v. Erickson
, 132 Ill. App. 2d 868 (1971).  Here, the trial court did not concern itself with the issue of the dischargeability of Marvin’s debt or require him to liquidate his assets to pay the discharged debts.  Rather, the court properly examined the effect of Marvin’s bankruptcy on Marcella’s ability to continue providing for Shana’s needs. 
 The trial court focused on the status of the parties as of the date the petition for modification was filed and whether, as of that date, a substantial change in circumstances had occurred.  Additionally, the trial court properly considered that Marvin’s discharge of debt left him with a greater ability to pay additional support.  See 
In re Marriage of Underwood
, 314 Ill. App. 3d 325, 329 (2000)(spouse’s bankruptcy discharge rendered him better able to pay a higher amount of maintenance). 
 Thus, the modification of child support caused by the spouse’s discharge in bankruptcy does not circumvent or infringe upon the jurisdiction of the bankruptcy court.  See 
Eckert
, 144 Wis. 2d at 779, 424 N.W.2d at 763 (modification of support on basis of changed circumstances caused by payor spouse’s discharge in bankruptcy does not frustrate the federal policy of a fresh start); 
Kruse v. Kruse
, 464 N.E.2d 934, 938 (Ind. App. 1984)(petition for modification of support is not an attempt to subvert the jurisdiction of bankruptcy court). 

Marvin next asserts that Marcella had no legal obligation to pay his former attorneys, as this was nonmarital debt that was discharged in bankruptcy, and therefore the trial court improperly considered the debt in setting the weekly amount of child support.  Marcella counters that Marvin’s former attorneys had attached liens to the marital home to collect the debt, which precluded her from refinancing the house.  Marcella claims that she filed a motion to remove the liens, which was heard and denied by the trial court.  However, the order is not in the record, and there is no evidence that a hearing was held to determine whether the liens against the house were invalid.  If the liens are invalid, then Marcella would have no obligation to pay Marvin’s former attorney fees. 
 Accordingly, we remand the cause to the trial court to hold a hearing to determine the validity of the liens, and, if the liens are found to be invalid, the court is directed to adjust the amount of child support considering the financial status of the parties.  
 Marvin next asserts that the trial court failed to specify the basis for its contempt finding.  He assumes that the contempt finding was intended to penalize him for discharging his debts in bankruptcy.  The record is clear that the court held Marvin in contempt for his wilful failure to pay Shana’s cheerleading expenses.  The evidence presented at the hearing on Marcella’s rule to show cause demonstrated that Marcella was forced to pay $600 for Shana’s cheerleading camp expenses despite a prior court order requiring Marvin to pay one-half of the expenses.  While Marvin did reimburse a portion of his share, he failed to pay the total within 30 days as required.  Marvin admitted that he failed to pay the cheerleading expenses within 30 days of Marcella’s submission of the bill.  Marvin claimed that he could not afford to make the payment within 30 days.  The court had sufficient evidence to conclude otherwise based on Marvin’s income and the bankruptcy discharge of substantial debt.  The trial court found that Marvin failed to pay his share of the cheerleading school for Shana within 30 days as mandated by the judgment of dissolution and that his failure to pay the fee was wilful.  We do not find that the trial court penalized Marvin for discharging his debts in bankruptcy.

CROSS-APPEAL

Marcella argues in her cross-appeal that the trial court’s only abuse of discretion in awarding attorney fees was its reduction of the fees claimed.  Marcella maintains that she incurred a total of $4,370 in attorney fees as a result of her petitions for a rule to show cause and for other relief and that the trial court erred in reducing the fees by $890.  Marvin contends that the trial court abused its discretion in awarding attorney fees to Marcella. 

Section 508 of the Act permits a trial court to require that one spouse pay the other spouse’s reasonable attorney fees incurred in the dissolution proceedings.  750 ILCS 5/508 (West 1998).  The award may be made when the court determines that one spouse has an inability to pay his or her fees and the other spouse has the ability to pay such fees.  750 ILCS 5/508(a) (West 1998); 
In re Marriage of Morse
, 240 Ill. App. 3d 296, 312 (1993).  The recovery of fees may be made where a party must petition the court to enforce the terms of the judgment.  750 ILCS 5/508(b) (West 1998); 
In re Marriage of Donahoe
, 114 Ill. App. 3d 470, 477 (1983).  An award of attorney fees lies within the discretion of the trial court and will not be reversed absent an abuse of that discretion.  
In re Marriage of Powers
, 252 Ill. App. 3d 506, 508-09 (1993).

At the hearing on the petition for fees, Marvin objected to only $890 in fees, the majority of which represented the time Marcella’s counsel spent filing motions to remove the liens against the marital residence.  We conclude that the fees objected to were related to the central issue of the petition for relief.  As such, the fees were reasonable and necessary. 

Marvin asserts that the trial court made no findings as to the parties’ relative ability to pay the fees.  However, our review of the record shows that the trial court specifically found that Marcella lacked the ability to pay her own attorney fees and court costs and that Marvin had the ability to contribute to those fees and costs.  Marvin earned nearly two times the salary Marcella earned and had reduced his debt obligations through bankruptcy.  Marcella had a $16,000 student loan, paid $243 per month for COBRA premiums, and was burdened with a substantial debt because of Marvin’s bankruptcy.  Even absent a showing of inability to pay, a party who has been forced to resort to the judicial process to secure compliance with the terms of an order or judgment is entitled to reasonable attorney fees.  
In re Marriage of Irvine
, 215 Ill. App. 3d 629, 635 (1991).  Accordingly, the trial court abused its discretion in failing to award Marcella the total amount of attorney fees of $4,370.

Marcella next contends that the trial court erred by not finding Marvin in contempt for unilaterally terminating the COBRA premium payments.  Marvin acknowledged that he had made no COBRA payments after May 1998.  However, Marvin asserts that the COBRA payments are classified as maintenance and his obligation to provide coverage for maintenance terminated as of April 1998, the date Marcella began to cohabit with her fiancé, and the date to which the parties stipulated that maintenance terminated.

We agree with Marcella that nowhere in the judgment of dissolution were the COBRA premium payments classified as maintenance.  The judgment clearly established the terminating event for Marvin’s obligation to pay COBRA premiums as the date upon which Marcella became eligible for group coverage or the date upon which the coverage expired, whichever occurred first.  Marcella testified that she did not receive health insurance coverage until July 1999 and had paid a total of $3,226 in COBRA premiums since the judgment.  Marvin offered no testimony as to the COBRA issue and admitted that he had made no COBRA payments after May 1998.  We note that, contrary to Marvin’s assertion, bankruptcy does not terminate a spouse’s obligation to provide court-ordered health insurance coverage for the other spouse.  See 
In re McLain
, 241 B.R. 415 (8th
 Cir. 1999).   Accordingly, we find the trial court erred in failing to order Marvin to pay the COBRA premiums totaling $3,226.  However, we decline to direct the trial court to issue a contempt order.  It is sufficient to require Marvin to pay the amount to Marcella
.  

CONCLUSION

In sum, we affirm the decision of the trial court to modify child support.  We also affirm the trial court’s decision to grant Marcella attorney fees but modify the award to reflect that Marcella receive $4,370 in attorney fees.  We remand the case to the trial court with instructions to hold a hearing to determine the validity of the liens and, if the liens are found to be invalid, the court is directed to adjust the amount of child support considering the financial status of the parties.  
We further direct the trial court to order that Marvin pay Marcella the COBRA premiums totaling $3,226.

For these reasons, the order of the circuit court of Winnebago County granting Marcella's motion for an increase in child support is affirmed; the order granting Marcella attorney fees is affirmed as modified; the order denying the petition for contempt against Marvin for his failure to make COBRA payments is affirmed as modified; and the cause is remanded with directions.

Affirmed as modified; remanded with directions.

HUTCHINSON, P.J., and GEIGER, JJ., concur.