**Diana C. TIMMONS, Respondent,**

v.

**Edward E. TIMMONS, Appellant.**

**No. WD 61551.**

Missouri Court of Appeals,
Western District.

April 30, 2004.

Bruce R. Anderson, Kansas City, MO, for appellant.

John R. Shank, Jr., Kansas City, MO, for respondent.

Before BRECKENRIDGE, P.J.,
EDWIN H. SMITH and HOWARD, JJ.

PATRICIA BRECKENRIDGE, Judge.

Edward E. Timmons (Husband) appeals the trial court's judgment dissolving his marriage to Diana C. Timmons (Wife). Husband raises five points on appeal. First, Husband claims that the trial court erred in determining the presumed correct child support amount because, after rejecting both parties' Form 14 worksheets, it did not prepare its own Form 14 worksheet or articulate on the record how it determined the child support amount. Second, he asserts that the trial court erred in ordering him to pay retroactive child support because it did not consider his voluntary payments, his inability to pay retroactive child support, and his discharge in bankruptcy. Third, he argues that the trial court erred in awarding Wife maintenance because it failed to consider Wife's ability to support herself through appropriate employment, his inability to meet both his and Wife's needs, and his discharge in bankruptcy, and because it did not determine the maintenance award before it calculated the child support award. Fourth, Husband contends that the trial court abused its discretion in ordering him to pay $1,000 of Wife's attorney's fees because the award is inconsistent with the parties' financial positions. Fifth, Husband avers that the trial court erred in failing to make specific findings of fact and conclusions of law pursuant to his request.

This court finds that the trial court erred in determining the prospective and retroactive child support awards because the court did not create its own Form 14 or articulate on the record how it calculated the presumed child support amount. Furthermore, the child support award included an amount for maintenance which may have been improperly calculated, as it appears that the court calculated the amount of maintenance after it calculated the child support amount. This court also finds, however, that the trial court did not abuse its discretion in ordering Husband to pay $1,000 of Wife's attorney's fees, and the trial court made sufficient findings of fact and conclusions of law pursuant to Husband's request. Accordingly, the judgment of the trial court is affirmed, in part, reversed, in part, and remanded.

## Factual and Procedural Background

Husband and Wife were married on September 13, 1980. They had two children, Daniel Ray, born on September 2, 1982, and Stacy Jean, born on April 14, 1984. The parties separated on July 12, 2000, and Wife filed her petition for dissolution of marriage on September 29, 2000. In her petition, she requested, *inter alia*, child support, maintenance, and attorney's fees. Husband filed his answer and cross-petition on October 17, 2000.

On February 23, 2001, Husband was ordered to pay child support, *pendente lite*, in the amount of $448 per month, beginning March 15, 2001. Husband subsequently voluntarily filed for bankruptcy. Wife did not join in his bankruptcy petition. On October 15, 2001, the bankruptcy court released Husband from all dischargeable debts and "[a]ny judgment heretofore or hereafter obtained in any court" if dischargeable under 11 U.S.C. section 523 (1993) or determined to be dischargeable by the bankruptcy court. The order further provided that "[a]ll creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void ... are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities" from Husband.

After Husband's discharge in bankruptcy, a trial was held on February 25, 2002, on the petition for dissolution of marriage. On May 13, 2002, the trial court entered its judgment dissolving the parties' marriage. In its judgment, the trial court found that "[t]he Form 14's submitted by both [Wife] and [Husband] are unjust and inappropriate because they did not take into account the maintenance hereinafter awarded, and the childrens' [sic] reasonable extraordinary expenses." The trial court then ordered Husband to pay $600 per month in child support, beginning May 1, 2002. The trial court also ordered Husband to pay child support retroactive to September 29, 2000. In calculating the amount of retroactive child support, the trial court gave Husband a credit of $5,824 for amounts he had previously paid for child support, and determined that he still owed $5,576.

With regard to Wife's request for maintenance, the trial court found that she "lacks sufficient property, including the property herein set aside to provide for her reasonable needs and is unable to support herself through appropriate employment." The court further determined that Wife had a monthly net income of $2,412, and Husband had a monthly gross income of $2,925, per his bankruptcy filing. Thus, the trial court, after considering the award of child support and the factors from section 452.335.2,[1] RSMo 2000,[2] found that Wife had reasonable unmet needs in the amount of $932 per month, and ordered Husband to pay her $300 in maintenance per month. In addition, the trial court, after considering all of the factors in section 452.355, ordered Husband to pay

$1,000 of Wife's attorney's fees. This appeal followed.

## Standard of Review

"This court will review the judgment of the trial court under the standard of review applicable to any other court-tried case." *Eckhoff v. Eckhoff,* 71 S.W.3d 619, 622 (Mo.App.2002). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## Error in Child Support Award

In his first point, Husband claims that the trial court erred in determining the presumed correct child support amount because, after rejecting both parties' Form 14 worksheets, it did not prepare its own Form 14 worksheet or articulate on the record how it determined the child support amount. Husband further argues that the trial court's calculation was erroneous because the court determined the child support amount before the maintenance amount and "characterized as 'extraordinary' expenses which were not educational or intended to enhance the athletic, social or cultural development of the children."

In *Woolridge v. Woolridge,* 915 S.W.2d 372, 378–79 (Mo.App.1996), this court set forth a two-step procedure for the trial court to follow to determine child support awards in compliance with section 452.340 and Rule 88.01. The Supreme Court approved this procedure in *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997).

---

1. Although the trial court stated in its judgment that it considered the factors in section 452.355.2 in making the maintenance award, the factors relating to maintenance are actually found in section 452.335.2.

2. All statutory references are to the Revised Statutes of Missouri 2000.

■ In the first step under *Woolridge*, the trial court must "determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation." *Woolridge*, 915 S.W.2d at 379. In determining the presumed child support amount under the first step, the trial court can either accept one of the Form 14 calculations submitted by the parties, or reject both parties' Form 14 calculations and make its own calculation. *Id.* at 380–81. " 'Rejection' of a Form 14 calculation by a party occurs when the trial court finds that: 1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or, 3) the mathematical calculation is incorrect." *Id.* at 378. After the court has determined and found the correct Form 14 amount, the second step requires the trial court "to consider whether to rebut the presumed correct child support amount ... as being unjust or inappropriate after consideration of all relevant factors." *Id.* at 379.

In this case, the trial court found that both parties' Form 14 worksheets were "unjust and inappropriate because they did not take into account the maintenance hereinafter awarded, and the [children's] reasonable extraordinary expenses." The trial court then found that "[c]hild support should be set in the sum of $600.00 per month," an amount different from that proposed by either party.

These findings confuse the concepts of rejection and rebuttal. The findings indicate that the court believed the parties' Form 14 worksheets were incorrect because they did not take into account the maintenance award and the children's reasonable extraordinary expenses. Errors concerning the inclusion or exclusion of items in a Form 14 are appropriate bases upon which the court should reject the Form 14, pursuant to the first step of the

procedure in *Woolridge*. *Id.* at 378. Instead of rejecting the parties' Form 14 worksheets, however, the trial court found that they were "unjust and inappropriate," which is language used to rebut the Form 14 calculation of the presumed correct child support amount in the second step of the procedure in *Woolridge*. *Id.* at 379.

■ In the first step of the procedure in *Woolridge*, the trial court can either accept one of the Form 14 calculations submitted by the parties or reject them and make its own calculation. *Id.* at 380–81. The court in this case did neither. When the trial court finds the parties' Form 14 calculations to be incorrect and rejects them, the court "has a duty under the rule to do its own correct Form 14 calculation and the failure to do so is reversible error." *Id.* at 381. "The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record, ... or by articulating on the record how it calculated its Form 14 amount." *Id.* at 382. While the trial court went on to find that "[c]hild support should be set in the sum of $600.00 per month," there is nothing to indicate that the court found this amount to be the presumed correct child support amount pursuant to its own Form 14 calculation. Not only is there no evidence that the trial court made its own Form 14 worksheet, but the trial court did not articulate on the record how it calculated its child support amount. Nevertheless, "[t]he lack of specific findings as to how the trial court calculated its Form 14 amount will not automatically trigger a reversal on appeal on that issue, provided the record clearly indicates how the trial court arrived at its Form 14 amount." *Id.*

The record does not clearly indicate how the trial court calculated its child support amount. The trial court did make specific findings as to the relative monthly

incomes of both parties in discussing maintenance. The court's findings, however, included only Wife's net income and not her gross income, which is required for a Form 14 calculation. Directions, Comments for Use and Examples for Completion of Form No. 14, Line 1, Gross Income. Moreover, while the court found that the parties' Form 14s failed to "take into account" the children's reasonable extraordinary expenses, it is unclear from the record whether the court included these expenses in its calculation and, if so, in what amount; or whether the court did not include them in its calculation but used them as a basis for rebuttal. *See Ricklefs v. Ricklefs*, 39 S.W.3d 865, 877–78 (Mo.App.2001) (noting the three alternatives for ordering payment of a percentage of extraordinary expenses: including them in the Form 14 calculation of the presumed child support amount; excluding them from the Form 14 calculation but rebutting the presumed child support amount and adjusting it upward to include a just amount for extraordinary expenses; or making a separate order outside of Form 14 consideration for extraordinary expenses).

Unlike the amount of extraordinary expenses, the amount of maintenance the court presumably included in its child support calculation is discernable from the record, as the trial court stated in its judgment that it was awarding Wife $300 per month in maintenance. Although the maintenance amount is discernable from the record, the judgment indicates that the maintenance award may have been improperly calculated, which would render the child support calculation erroneous.

Because Line 2b on Form 14 includes the amount of maintenance awarded in the computation of the presumed child support amount, the Comment to Line 2b provides that "[i]f the court is establishing both child support and maintenance, the court shall first determine the appropriate amount of maintenance." Indeed, this court has held that when determining maintenance and child support awards, it is "improper methodology" for the trial court to calculate the child support award prior to determining the amount of maintenance. *Childers v. Childers*, 26 S.W.3d 851, 857 (Mo.App.2000).[3] The court appeared to properly determine maintenance first, as it rejected the parties' Form 14s because they did not include an amount for maintenance awarded. When the court awarded maintenance later in the judgment, however, the court indicated that it had already determined the amount of child support. Specifically, the trial court stated, "After consideration of the child support awarded herein, and the factors set forth in 452.355.2[sic], petitioner has reasonable unmet needs of $932.00 per month." The trial court could not have done what its judgment states, that is, calculated maintenance before child support and, yet, considered the amount of

---

**3.** It is noted that this requirement appears to be contrary to the provision in section 452.335.2(1) that one factor to be considered in determining the appropriate sum for maintenance is "[t]he financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, *including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian*[.]" (Emphasis added.) In light of the clear directive in the Comment to Line 2b to calculate the maintenance award before the child support award, this court does not interpret this provision as requiring the opposite. Rather, this court interprets this provision as simply requiring the court to consider, in determining the amount of maintenance, that portions of a child support award pay for fixed expenses incurred by the parent with whom the child is living. *See* Directions, Comments for Use and Examples for Completion of Form No. 14, Assumptions (12).

child support awarded when it calculated maintenance. If the trial court calculated the awards in the wrong order, the amount of maintenance would be incorrect and the child support amount would also be incorrect, as it would be based, in part, on the improper maintenance calculation.

Because the record does not clearly indicate how the trial court calculated its Form 14 child support amount, and it is impossible to determine whether the trial court calculated the maintenance and child support awards in the proper order, the trial court's determination of child support is reversed and remanded with directions for the trial court to reconsider the child support award.

### Proper to Award Retroactive Child Support

In his second point, Husband asserts that the trial court erred in ordering him to pay retroactive child support. In light of this court's finding that the trial court erred in calculating the amount of child support, the award of retroactive child support also must be reversed. Nevertheless, this court will address Husband's claim of error to the extent it challenges the propriety of the trial court's awarding retroactive child support.

■ A trial court may, after considering all relevant factors, award retroactive child support to the date of the filing of the petition for dissolution of marriage. Section 452.340.1. "The trial court has considerable discretion in making child support awards retroactive, and its judgment will not be reversed absent an abuse of its discretion." *Brandow v. Brandow,* 18 S.W.3d 584, 586 (Mo.App.2000).

Here, the trial court ordered Husband to pay retroactive child support from September 29, 2000, the date Wife filed her petition for dissolution of marriage. In determining the amount of retroactive child support Husband owed, the trial court credited Husband $5,824 for child support payments he made pursuant to a temporary support order.

■ First, Husband asserts that the trial court erred in making this award because the court did not consider voluntarily payments he made to Wife during the time between the parties' separation and trial. "[A] party is entitled to receive credit against the retroactive award of temporary support for voluntary amounts paid to the child between the time of separation and the time of trial." *Shelton v. Shelton,* 29 S.W.3d 400, 405 (Mo.App.2000). Although the record showed that Husband voluntarily gave Wife approximately $4,600 after the parties separated, there was evidence that this amount was Husband's contribution, before he filed for bankruptcy, toward the substantial amount of marital debt, and that Husband did not begin paying child support until he was ordered to do so under the February 2001 temporary support order. Thus, the trial court was not required to give Husband credit for the $4,600 when it ordered Husband to pay retroactive child support.

Second, Husband claims that the retroactive child support award was erroneous because the trial court failed to consider his inability to pay retroactive child support. Husband is correct that the trial court must consider the parties' financial resources when awarding child support. Section 452.340.1(2). This court presumes that the trial court knew the law and applied it. *Dorman v. Dorman,* 91 S.W.3d 167, 171 n. 4 (Mo.App.2002). There is no indication to the contrary in the record. In fact, in its judgment, the trial court made specific findings regarding Husband's and Wife's monthly incomes. Thus, the trial court considered the parties' fi-

nancial resources when it awarded retroactive child support.

■ Third, Husband contends that the trial court erred in entering the retroactive child support award because any such obligation was discharged in his bankruptcy proceeding. Child support and maintenance obligations have a "special status" in bankruptcy proceedings, as they are not dischargeable. *Poland v. Poland,* 895 S.W.2d 670, 672 (Mo.App.1995). Eleven U.S.C. section 523(a)(5) states, in pertinent part:

> (a) A discharge ... does not discharge an individual debtor from any debt–
>
> . . . .
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other or-·der of a court of record, ... but not to the extent that—
>
> . . . .
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

Husband focuses on the requirement that the child support debt must have arisen in connection with a separation agreement, divorce decree, or property settlement. He claims that because he "was discharged in bankruptcy proceedings from any obligation to pay child support prior to the court's February 23, 2001, order, ... his obligation to pay retroactive child support prior to February 23, 2001, [was] not 'in connection with' an order of the trial court designated as support as required by 11 U.S.C. 523(a)(5)." Basically, Husband is arguing that the trial court could not order him to pay retroactive child support for the time before February 23, 2001, because, when he was discharged, there was no order in place and covering this time period that required him to pay child support.

"Section 523(a)(5) clearly requires that the support obligation be established by court order." *In re Hutchison,* 270 B.R. 429, 433 (Bankr.E.D.Mich.2001). The language of section 523(a)(5), however, provides no time limitation on when the order of support must be entered for the support obligation to be nondischargeable in bankruptcy. Moreover, Husband provides no authority for his assertion that the nondischargeability of support obligations is limited only to prospective support payments or to support awards entered before the discharge in bankruptcy. Indeed, there is case law to the contrary. *See Hutchison,* 270 B.R. at 431 (holding that an out-of-wedlock child's pending claim for retroactive child support was nondischargeable in bankruptcy because "a debt for child support arises upon the birth of the child and that the fact that no court had yet ordered the debtor to support the child does not take the debt outside the scope of 11 U.S.C. § 523(a)(5)").[4]

Here, Husband was ordered to pay retroactive child support in the dissolution judgment. The retroactive child support award satisfied the requirements that the

---

4. In *Hutchison,* a Chapter 7 debtor brought an adversary proceeding to determine whether a claim for $25,000 in retroactive child support for his out-of-wedlock child was dischargeable. 270 B.R. at 431–32. At the time of his discharge, the debtor had been declared the child's biological father but had not been ordered to pay any child support, and the child's claim for retroactive child support was pending. *Id.* at 432. Analyzing section 523(a)(5) in the context of other Bankruptcy Code provisions, the court found that section 523(a)(5) was not intended to require that a support order be in existence at the time the bankruptcy petition was filed. *See id.* at 433–36.

debt be for the support of the children in connection with a divorce decree. Therefore, the award was nondischargeable. Nevertheless, because this court has found that the child support award was incorrectly calculated, the award of retroactive child support must also be reversed and remanded for reconsideration.

### Error in Maintenance Award

■ In his third point, Husband claims that the trial court erred in awarding Wife maintenance. The trial court can award maintenance only if it finds that the party seeking maintenance: "(1) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2)[i]s unable to support himself through appropriate employment[.]" Section 452.335.1. This court affords the trial court broad discretion and will not reverse the trial court's maintenance award absent an abuse of discretion. *Hatchette v. Hatchette*, 57 S.W.3d 884, 891 (Mo.App.2001).

In this case, the trial court found that Wife "lacks sufficient property, including the property herein set aside to provide for her reasonable needs and is unable to support herself through appropriate employment." The trial court then determined, after considering the factors in section 453.335.2 and the child support award, that Wife had reasonable unmet needs of $932 per month. The trial court ordered Husband to pay Wife $300 per month "for periodic maintenance, to be modifiable, but terminate upon the death of either party or the remarriage of [Wife]."

Husband claims the trial court erred in making this award for several reasons. One of Husband's allegations of error is that the maintenance award violated the bankruptcy discharge order. Husband admits that maintenance awards for the support of a spouse are nondischargeable debts under 11 U.S.C. section 523(a)(5), but he contends that Wife and the trial court used the maintenance award as a way to circumvent the bankruptcy order and require him to pay discharged marital debts.

■ Husband's point essentially argues the effect of the discharge on the maintenance award. "[W]hile the grant of a discharge in bankruptcy is the function of the bankruptcy court alone, the effect of the discharge can be determined by any court where it is properly raised." *In re Marriage of Letsinger*, 321 Ill.App.3d 961, 255 Ill.Dec. 108, 748 N.E.2d 812, 818 (2001). State courts and federal bankruptcy courts have concurrent jurisdiction to decide whether an obligation constitutes a nondischargeable alimony, maintenance or support debt under 11 U.S.C. section 523(a)(5). *Cowart v. White*, 711 N.E.2d 523, 528 (Ind.1999), *on rehearing*, 716 N.E.2d 401 (Ind.1999). Federal bankruptcy law governs in making this determination. *In re Burton*, 242 B.R. 674, 679 (Bankr.W.D.Mo.1999).

■ The characterization of an award in a dissolution judgment as a nondischargeable maintenance or support debt "depends primarily on the function the award was intended to serve at the time it was awarded." *Id.* This court discerns the court's intent from the totality of the circumstances at the time the award was made. *Id.* In reviewing the totality of the circumstances, the "three main factors" to consider are: "(1) the language and substance of the dissolution decree or separation agreement, ...; (2) the parties' relative financial circumstances at the time of the dissolution; ... and (3) the degree to which the obligation enables the recipient to maintain daily necessities." *Id.*

Applying these factors, the plain language of the judgment is that Husband's

payments of $300 per month to Wife were "for periodic maintenance." These payments were to end upon the death of either party or Wife's remarriage, which is a "conventional restriction on alimony" or maintenance indicating that the obligation was, in fact, in the nature of alimony or maintenance. *In re Fitzgerald,* 9 F.3d 517, 521 (6th Cir.1993).

On the second factor, a comparison of the parties' relative financial circumstances shows that Husband worked as an inspector for a fiberglass manufacturing company, earning $2,925 in gross income per month. Right before the separation, Husband stopped working overtime and stopped working his second job. Five months before trial, Husband, who already had a pick-up truck and a motorcycle, bought a new car. Husband's monthly car payment for this new car was $263, which Husband was able to pay in addition to his other living expenses.

In comparison, Wife's primary income was from babysitting services she had been providing in the marital home for the past thirteen years. Wife's income from her babysitting business varied on a monthly, weekly, and even daily basis. Wife's income from her babysitting business was insufficient to pay her living expenses and service the substantial debt left to her after Husband's discharge in bankruptcy, so she also worked part-time in the evenings for a cleaning business and a seasonal retail business. Wife attempted to find other full-time work for higher pay, but was unable to find anything that paid more than $10 to $11 per hour. The court found Wife's net income to be $2,412 per month. This evidence indicates that, relative to each other, Husband's financial circumstances were better than Wife's and, therefore, the maintenance award was in-

tended to be in the nature of a maintenance obligation.

On the third factor, the degree to which the obligation enables the recipient to maintain daily necessities, the maintenance awarded was $300 per month. In light of the trial court's finding that Wife had reasonable unmet needs of $932 per month,[5] a cash payment of $300 per month would certainly assist Wife in maintaining her daily necessities. *Cf. Burton,* 242 B.R. at 681 (finding that a money judgment was not intended to be in the nature of alimony, maintenance or support because it is "hard to buy daily necessities with a money judgment; cash or the ability to receive cash on a regular basis work considerably better, and the state court surely knew this."). The totality of the circumstances indicates that the court intended that the maintenance award function in the nature of a maintenance obligation. Therefore, 11 U.S.C. section 523(a)(5) applies to the maintenance award, making it nondischargeable in Husband's bankruptcy.

■ Husband also alleges that the trial court erred in determining the amount of maintenance after it determined the amount of child support. As previously noted, when determining maintenance and child support awards, it is "improper methodology" for the trial court to calculate the child support award prior to determining the amount of maintenance. *Childers,* 26 S.W.3d at 857. Because this court cannot determine from the judgment whether the trial court properly calculated the maintenance award before the child support award, the award of maintenance is reversed and remanded. In light of the decision to reverse and remand the maintenance award, which will most likely cause the trial court to reconsider Wife's

---

**5.** This finding was based, in part, on the trial court's erroneously calculating the child sup-

port award prior to determining maintenance. *See* discussion, *infra.*

needs and Husband's ability to pay, this court will not address the allegations of error regarding these issues that Husband raised in this point.

### No Error in Ordering Husband to pay a Portion of Wife's Attorney's Fees

In his fourth point, Husband asserts that the trial court erred in ordering him to pay $1,000 of Wife's attorney's fees. Specifically, he argues that the trial court abused its discretion in making this award because it "is inconsistent with the parties' relative financial positions."

A trial court may order one party in a dissolution action to pay the other party's attorney's fees. Section 452.355.1. In making such an award, the trial court must consider all relevant factors, "including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." *Id.* "The trial court has considerable discretion in determining whether to award attorney's fees." *Morse v. Morse*, 80 S.W.3d 898, 907 (Mo.App. 2002). "An award of attorney's fees will be reversed only upon a showing of an abuse of discretion." *Id.* "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 399 (Mo. banc 2001).

In this case, the trial court found, after considering all of the relevant factors from section 452.355, that Husband "is capable of, and should contribute" $1,000 to Wife's attorney's fees. Husband contends that the trial court abused its discretion in making this award because, essentially, Wife's financial resources are greater than his are. In determining whether to award attorney's fees, however, the trial court "may consider all relevant factors" and "is not limited to solely the financial resources of the parties." *Sola v. Bidwell*, 980 S.W.2d 60, 66 (Mo.App.1998). The court may also consider the parties' conduct during the marriage and "the extent to which the conduct of one spouse required the other spouse to expend funds on attorney's fees." *Taylor v. Taylor*, 12 S.W.3d 340, 348 (Mo.App.2000).

The evidence was that, during the marriage, Husband had a drinking problem and concealed the amount of his work and income from Wife, which led to the breakdown of the marriage. In addition, during the separation, Husband filed for bankruptcy, which Wife testified prolonged the divorce proceedings, increased her mortgage debt, and caused her to incur more legal fees. Husband did not present any evidence at trial to dispute Wife's claim that his actions increased her attorney's fees. In light of this evidence, Husband has not shown that the trial court's award of attorney's fees was "against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Lueckenotte*, 34 S.W.3d at 399. Furthermore, the judgment demonstrates that the trial court considered Husband's ability to pay Wife's attorney's fees because, while the evidence established that Wife owed $10,000 in attorney's fees, the trial court ordered Husband to pay only $1,000. Therefore, the trial court did not abuse its discretion in ordering Husband to pay $1,000 of Wife's attorney's fees.

### Findings of Fact and Conclusions of Law Sufficient Per Husband's Request

In his fifth point, Husband claims that the trial court erred in "failing to provide, upon request of [Husband], findings of fact and conclusions of law pursuant to Rule

73.01(c)." Specifically, he argues that the trial court's failure to make specific findings and conclusions is erroneous because it "materially interferes with appellate review in that the record is insufficient to support the court's judgment."

Rule 73.01 sets forth when the trial court's duty to include findings of fact and the legal grounds for its decision is triggered:

> The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.

> All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

Under Rule 73.01, a party is required to specify the controverted fact issues on which it is seeking findings and, if not requested, all fact issues are found in accordance with the judgment.

Here, Husband requested the trial court to make four findings of fact and conclusions of law: (1) whether Wife "is able to support herself through appropriate employment"; (2) whether Wife "lacks sufficient property, including property which is apportioned to her, to provide for her reasonable needs"; (3) whether Husband "is capable of contributing to [Wife's] living expenses"; and (4) whether Husband "is able to pay the costs of this action and [Wife]'s attorney fees." [6] The trial court made each of the requested findings. Finding XII of the trial court's judgment states that Wife "lacks sufficient property,

including the property herein set aside to provide for her reasonable needs and is unable to support herself through appropriate employment." Finding XII further provides that Husband "is capable of" contributing $300 per month to Wife's living expenses through maintenance. Finding XIII states that Husband "is capable of" paying $1,000 of Wife's attorney's fees. Thus, the trial court made the specific findings of fact and conclusions of law on the issues requested by Husband.

Although the trial court made findings on the issues specified by Husband, Husband argues that the trial court erred because it did not go into more detail. If Husband wanted findings on more detailed issues, however, he should have requested them. "If a party desires findings of fact and conclusions of law, it is *that party's duty* to identify the issues to be included." *In re Marriage of Colley*, 984 S.W.2d 163, 171 (Mo.App.1998) (emphasis added). "The trial court must issue findings only on those controverted fact issues which have been *specified* by counsel." *Id.* (emphasis added). Here, the trial court issued findings and conclusions on the specific controverted fact issues requested by Husband. As such, the trial court made sufficient findings of fact and conclusions of law pursuant to Husband's request.

### Conclusion

This court finds that the trial court erred in making the child support award, the retroactive child support award, and the maintenance award. The trial court did not err in ordering Husband to pay Wife's attorney's fees, and the trial court

---

6. In the argument section of this point, Husband claims that the trial court erred in failing to make specific findings of fact regarding the child support award. Husband, however, admits that he did not request that the trial court make specific findings on child support. Since Husband did not request these specific findings, this court will not address the issue.

made sufficient findings of fact and conclusions of law pursuant to Husband's request. Accordingly, the judgment of the trial court is affirmed, in part, reversed, in part, and remanded for the trial court to reconsider the child support and maintenance awards.

All concur.