*In re* MARRIAGE OF PATRICIA L. GRAY, Petitioner-Appellee, and JOHN C. GRAY, Respondent-Appellant.

Second District   No. 2—99—0947

Opinion filed June 13, 2000.

Richard J. Mikuta and Joan M. Fenstermaker, both of Richard J. Mikuta, P.C., of Chicago, for appellant.

Pamela L. Kohn Andrews, of Nadelhoffer Kuhn Mitchell Moss Saloga & Kocsis, P.C., of Naperville, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, John C. Gray, appeals the order of the circuit court of Du Page County granting his petition to terminate maintenance obligations from the date he filed his petition rather than from the date on which petitioner, Patricia L. Gray, began cohabiting with another person on a resident, continuing, conjugal basis. John contends that both section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(c) (West 1996)) and the marital settlement agreement incorporated in the judgment of dissolution require that the obligation to pay maintenance automatically terminates when the recipient cohabits with another person on a resident, continuing, conjugal basis.

Patricia and John's marriage was dissolved on July 15, 1988. The judgment of dissolution incorporated the marital settlement agreement, which provided that John pay Patricia permanent maintenance in the amount of $16,200 annually. The agreement further provided, in relevant part, that John's obligation to pay maintenance "terminated on the earliest of the following events: (a) the remarriage of Patricia; or (b) the death of either party; or (c) the cohabitation of Patricia."

On February 18, 1998, Patricia filed a petition to collect past-due maintenance payments, alleging that John had not complied with the terms of the settlement agreement. The petition further alleged that John had not made full monthly payments since March 1995 and

owed her $19,310.50 in arrearage. On June 22, 1998, John filed a petition to terminate maintenance alleging, *inter alia*, that Patricia cohabited with another in violation of section 510(c) of the Act and the marital settlement agreement. During her deposition, Patricia admitted that she cohabited with Elvie Evans.

Thereafter, John filed a motion for summary judgment requesting the trial court to find that Patricia cohabited with Evans on a resident, continuing, conjugal basis and to terminate maintenance no later than November 16, 1991, the date of Evans's death. The trial court agreed that Patricia did cohabit with Evans on a resident, continuing, conjugal basis and found that it began late in February or March 1991 and lasted until the time of Evans's death. The court further found that such cohabitation was of the nature to terminate John's maintenance obligations to Patricia based on the parties' marital settlement agreement as well as section 510(c) of the Act. The court, however, believed that it was bound by the holding of *In re Marriage of Kessler*, 110 Ill. App. 3d 61 (1982), and concluded that John's obligations to pay maintenance to Patricia terminated on July 22, 1998, the date John filed the petition to terminate maintenance. Patricia then was awarded the relief sought in her petition, and judgment was entered against John for maintenance arrears in the amount of $22,986.86. John timely appeals from the portion of the order granting his motion for summary judgment to terminate maintenance obligations from the date of filing of the petition rather than from the date on which Patricia began cohabiting with Evans.

On appeal, John contends that the trial court erred in finding that maintenance obligations terminate on the date of the filing of the petition. John asserts that both section 510(c) of the Act and the settlement agreement clearly provide that maintenance terminates when the recipient cohabits on a resident, continuing, conjugal basis. Patricia argues that sections 510(a) and (c) must be read together. Patricia asserts that, because each case is unique, the obligation to pay maintenance can be terminated only upon the trial court's finding of resident, continuing, conjugal cohabitation and these facts can be brought before the court only by the filing of a petition.

Summary judgment is proper when the pleadings, depositions, and admissions on file, together with the affidavits, if any, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *American Family Mutual Insurance Co. v. Hinde*, 302 Ill. App. 3d 227, 231 (1999). We review *de novo* an order granting summary judgment. *Harris Bank v. City of Geneva*, 278 Ill. App. 3d 738, 741 (1996).

The resolution of this appeal turns on the construction of section 510(c) of the Act. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 183 (1999). The cardinal rule of statutory construction is to ascertain and give effect to the plain meaning of a statute, and that inquiry begins with the language of the statute itself. *Davis*, 186 Ill. 2d at 184-85. Courts look first to the words of the statute, as the language used by the legislature is the best indication of legislative intent. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). A court must give the statute effect as written where the language is clear and unambiguous, without reading into it exceptions, limitations, or conditions that the legislature did not express. *Davis*, 186 Ill. 2d at 184-85. When the language of a statute is clear, no resort is necessary to other tools of interpretation. *Davis*, 186 Ill. 2d at 185.

■ We agree with John that section 510(c) of the Act clearly does not require that a payor spouse must file a petition before maintenance obligations may terminate. Section 510(c) provides:

"Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." 750 ILCS 5/510(c) (West 1996).

Section 510(c) flatly states that the obligation to pay future maintenance "is terminated" by the "resident, continuing conjugal" cohabitation of the recipient with another person. Therefore, cohabitation automatically terminates the maintenance obligation.

■ We also find that the legislature intended to establish a distinct standard between *terminating* maintenance and *modifying* maintenance. Unlike section 510(c), section 510(a) provides:

"Except as otherwise provided in paragraph (f) of Section 502 and in subsection (d), clause (3) of Section 505.2, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and, with respect to maintenance, only upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a) (West 1996).

Contrary to section 510(c), section 510(a) specifically requires that a motion must be filed and that such payments may be modified only after due notice and upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a) (West 1996). To read section 510(a) and 510(c) together, as urged by Patricia, would disregard the clearly expressed intention of the legislature to require that a petition must

be filed when *modifying* maintenance payments and that no motion must be filed when *terminating* maintenance payments in the event of death, remarriage, or cohabitation with another on a resident, continuing, conjugal basis. See *In re Marriage of McGowan*, 84 Ill. App. 3d 609, 614 (1980). Moreover, to hold that the obligation to pay maintenance continues until the date of filing the petition to terminate would be unjust because it would violate the express language of section 510(c). See *In re Marriage of Erickson*, 136 Ill. App. 3d 907, 915-16 (1985). We therefore hold that the trial court erred in concluding that John's obligation to pay maintenance terminated on the date of filing the petition rather than from the date Patricia began to cohabit with Evans on a resident, continuing, conjugal basis.

We also hold that the settlement agreement clearly intended that John could terminate maintenance, without first petitioning the court, from the date Patricia cohabited with Evans. Similar to section 510(c), the settlement agreement does not contain any provision requiring that a petition must first be filed to terminate maintenance or that the obligation to pay ceases from the date of the petition when Patricia cohabits with another. In fact, there need not be cohabitation on a "resident, continuing conjugal basis" as is required under section 510(c). The agreement merely provides that maintenance is terminated when Patricia cohabits with another. Accordingly, the trial court erred in concluding that the settlement agreement requires that the obligation to pay terminates from the date of the petition.

The trial court also erred in finding that it was bound by *In re Marriage of Kessler*, 110 Ill. App. 3d at 72. We find *Kessler* inapposite because it characterized the ex-spouse's payments as child support and analyzed the case as a modification of child support pursuant to section 510(a), not as a termination of maintenance under section 510(c). Additionally, the *Kessler* court justified its holding by relying on *Kowalski v. Kowalski*, 96 Ill. App. 3d 830 (1981), for the proposition that a petition for modification or termination would apply only to payments owed subsequent to the date of the filing of the petition. *Kessler*, 110 Ill. App. 3d at 74. However, in *Kowalski*, the relevant statutory provisions at the time did not list cohabitation as a terminating event. *Kessler* erroneously based its conclusion on *Kowalski*'s consideration of what might happen if the recipient's cohabitation occurred on or after the Act came into existence. *Kowalski*, 96 Ill. App. 3d at 833. Accordingly, because we conclude that section 510(c) clearly authorizes the automatic termination of maintenance obligations upon death, remarriage, or when the recipient cohabits with another on a resident, continuing, conjugal basis and because we find *Kessler* not binding, we decline to follow those authorities that hold maintenance

must terminate from the date of the petition in the event of cohabitation with another on a resident, continuing, conjugal basis. See, *e.g.*, *In re Marriage of Frasco*, 265 Ill. App. 3d 171 (1994); *In re Marriage of Hawking*, 240 Ill. App. 3d 419 (1992).

Patricia argues that, unlike remarriage or death, which can be determined with perfect accuracy, only a trial court can establish whether there is cohabitation on a resident, continuing, conjugal basis. We disagree. It is evident that the legislature intended to place cohabitation in section 510(c) because an individual's commencing cohabitation with another on a resident, continuing, conjugal basis represents a change in the status of that individual to the same extent as would death or remarriage. See *In re Marriage of Stanley*, 133 Ill. App. 3d 963, 977 (1985). If the parties disagree as to whether there was cohabitation, either party can file a motion to the court for a determination.

Patricia believes that the recipient, who is usually in a financially weaker position, would be unduly burdened by a unilateral termination of maintenance payments. However, we find that the payor is unduly burdened by paying maintenance when the recipient knows that the law requires that maintenance payments terminate immediately upon cohabitation on a resident, continuing, conjugal basis.

Patricia argues that the automatic termination of maintenance obligation could invite a "vindictive payor" to cease payment without just cause. We acknowledge that the policy of terminating maintenance from the date that cohabitation began could have the effect of encouraging the unilateral termination of maintenance payments when there is no legal basis for termination. Section 510(c) provides, however, that the right to maintenance "is terminated" in the event of the recipient's remarriage or cohabitation with another on a resident, continuing, conjugal basis. 750 ILCS 5/510(c) (West 1996). The legislature has therefore determined that the desirability of permitting the termination of maintenance immediately upon the happening of one of the specified events outweighs the potential adverse consequences of such a policy. We are not at liberty to disturb that determination. In the event there is no legal basis for termination, the recipient can file a motion for a rule to show cause and the court could order the vindictive payor to reimburse the recipient for attorney fees and costs. See 750 ILCS 5/508, 610 (West 1998). Additionally, if we were to hold that the obligation to pay maintenance continues until the payor files a petition to terminate, it would invite the vindictive recipient to conceal the fact of cohabitation with another. Given the circumstances in the present case, we find it unconscionable that Patricia ignored the mandates of the statute and her settlement agreement and continued to collect maintenance for almost seven years after she cohabited with Evans.

We conclude, therefore, that the trial court erred in finding that John's maintenance obligations terminated from the date of the filing of his petition. The trial court found that Patricia cohabited with Evans on a resident, continuing, conjugal basis no later than early in March 1991. The parties do not dispute this finding. Accordingly, we reverse the order finding that John's maintenance obligation terminated from the date of the filing of the petition and remand the cause with directions to enter a finding that John's maintenance obligation terminated no later than March 1, 1991, the date on which Patricia began cohabiting with Evans on a resident, continuing, conjugal basis.

Based on the foregoing, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

THOMAS and HUTCHINSON, JJ., concur.