*In re* MARRIAGE OF LORETTA C. ELENEWSKI, n/k/a Loretta C. Carter, Petitioner-Appellee, and JOHN F. ELENEWSKI, Respondent-Appellant.

Fourth District    No. 4—04—0538

Argued January 11, 2005.—Opinion filed May 12, 2005.

APPLETON, J., dissenting.

David M. Lynch (argued), of Lynch & Bloom, P.C., of Peoria, for appellant.

Melissa M. McGrath (argued), of Thomson & Weintraub, of Bloomington, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

On August 11, 2003, respondent, John F. Elenewski, filed a petition to terminate maintenance based on his belief that petitioner, Loretta C. Carter, had begun to cohabitate with another man sometime prior to April 30, 2002. In a June 2004 order, Judge Rebecca Simmons Foley terminated John's maintenance obligation, retroactive to the date John filed his petition to terminate maintenance. John appeals, arguing that the trial court should have terminated the maintenance portion of the unallocated support effective May 2002, when Loretta began residing with Robert L. Carter. We affirm.

## I. BACKGROUND

The judgment of dissolution in this case was entered November 2, 1994. On July 14, 2000, the trial court ordered that John pay $2,500 per month unallocated child support and maintenance to Loretta for 72 consecutive months, commencing on June 1, 2000. The court later found that it failed to appropriately consider the tax ramifications to each of the parties when determining the amount and, on October 3, 2000, entered an order increasing the amount of unallocated child support and maintenance to $3,500 per month, retroactive to June 1, 2000. Both the original and later orders stated that "the amount of support shall be reviewable" upon Loretta's remarriage, Loretta living on a conjugal basis with another man, or expiration of 72 consecutive months of payments.

On August 11, 2003, John petitioned the trial court to terminate maintenance payments to Loretta and unilaterally reduced his payments from $3,500 to $1,226.26. John stated that he believed that Loretta began cohabitating with Robert Carter prior to April 30, 2002, when Loretta and Robert purchased a residence together. Loretta admitted in her answer that she and Robert bought a home, and she testified that she had resided with Robert since mid-May 2002. John's attorney later learned that Loretta had married Robert on June 27, 2002, and in November 2003, filed a second petition on John's behalf to retroactively modify the unallocated maintenance as of the date of Loretta and Robert's marriage.

After conducting a hearing, the trial court filed an opinion letter in April 2004, stating that Loretta "has a vested right in the unallocated support of $3,500 up to August 11, 2003." The court entered an order reflecting this ruling on June 8, 2004. It also set John's monthly

child support obligation at $2,181.97, from August 11, 2003, forward. This appeal followed.

## II. ANALYSIS

John asserts that subsection (c) of section 510 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/510(c) (West 2002)) automatically terminated his obligation to pay maintenance upon Loretta's cohabitation and that the trial court erred in terminating maintenance retroactive only to the date he filed his petition to terminate. The court applied section 510(c) but concluded that the language in the order stating that the award "shall be reviewable" overrode the automatic termination provision. Because this issue involves the interpretation of a statute, our review is *de novo. Yang v. City of Chicago*, 195 Ill. 2d 96, 103, 745 N.E.2d 541, 545 (2001).

Section 510 of the Dissolution Act governs modification and termination of maintenance and child support. Subsection (a) states that the court may modify the maintenance or support provision of any judgment "only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2002). Subsection (c) provides "the obligation to pay future maintenance is terminated" upon the remarriage or cohabitation of the recipient "[u]nless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court." 750 ILCS 5/510(c) (West 2002).

This case involves unallocated child support and maintenance. Such an award does not separate out child support and allows the payor to deduct the entire award as maintenance for purposes of federal income tax. John unilaterally reduced his payment when he filed his motion to terminate maintenance to $1,226.26 per month, the amount that he determined satisfied his child support obligation. The court later found that child support in the amount of $2,181.97 per month was appropriate.

If this case involved only termination of maintenance on the basis of continuing conjugal cohabitation, we would have little difficulty affirming the trial court's order that termination was effective only as to installments accruing after notice of the filing of the motion for modification or termination. We have held that, despite the language of section 510(c), maintenance may be terminated on the basis of continuing conjugal cohabitation only upon the filing of a petition to terminate. Modification usually includes termination. *In re Marriage of Frasco*, 265 Ill. App. 3d 171, 179, 638 N.E.2d 655, 661 (1994); *cf. In re Marriage of Snow*, 322 Ill. App. 3d 953, 957, 750 N.E.2d 1268, 1271

(2001); *In re Marriage of Gray*, 314 Ill. App. 3d 249, 253, 731 N.E.2d 942, 946 (2000). Unlike cases involving remarriage or the death of a party, there is no certain date on which continuing conjugal cohabitation may be found to exist. *Frasco*, 265 Ill. App. 3d at 179, 638 N.E.2d at 661. Each such case must rest on its own facts, given the unique nature of the personal relationship. *Frasco*, 265 Ill. App. 3d at 176, 638 N.E.2d at 659.

This case, however, also involved a remarriage, on June 27, 2002. Normally that would be the appropriate date for termination of maintenance. The trial court did not use that date here because of the language in the order of October 3, 2000, that "the amount of support shall be reviewable" upon Loretta's remarriage, *et cetera*. The trial court concluded that language fit within the provision of section 510(c) that maintenance be terminated as of the date of remarriage "[u]nless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court." 750 ILCS 5/510(c) (West 2002). The order of October 3, 2000, was prepared by Loretta's attorney, was approved by John's attorney, and appears to be a written agreement between the parties as referred to in section 510(c).

■ ■ A further complication in this case is that John is not simply seeking to terminate an award of maintenance but an unallocated award of both maintenance and child support. Child support clearly cannot be reduced prior to the filing of the motion for modification. 750 ILCS 5/510(a) (West 2002); *Strum v. Strum*, 22 Ill. App. 3d 147, 149, 317 N.E.2d 59, 61 (1974). The recipient has a vested right in past-due installments of child support, and a court may not modify amounts that have already accrued. *In re Marriage of Burbridge*, 317 Ill. App. 3d 190, 193, 738 N.E.2d 979, 982 (2000). John argues that he did not seek to modify child support, only to split out the maintenance portion of the award. That is difficult to do, however, as is shown by John's unilateral reduction of his payments to $1,226.26, which he believed fulfilled his child support obligation. The trial court disagreed, ordering that the appropriate child support was $2,181.97. We conclude that the trial court did not abuse its discretion in terminating the maintenance portion of an unallocated award of maintenance and child support as of the date of the filing of the petition.

When child support and maintenance are unallocated, we lose the certainty of a specific amount of child support. That is done for the benefit of the payor, who is thereby allowed to deduct child support. One of the fundamental aspects of child support is that modifications cannot be retroactive. The recipient of child support is entitled to believe the ordered payments are definite until a court tells her otherwise. Clearly, John did not have the power to unilaterally decide

how much he would continue to pay as child support. After the trial court made that decision, however, could the trial court make that order retroactive? Our answer is "no." A recipient of unallocated child support should not have to take the risk that, upon allocation, a trial court will set child support for past periods at the low end of the range.

We do not condone Loretta's failure to notify John of her remarriage. Loretta had an obligation to notify John of her marital status, a condition upon which her right to maintenance was based. Nevertheless, on the facts of this case, the trial court properly terminated maintenance as of August 11, 2003, the date John filed the petition to terminate.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE APPLETON, dissenting:

I respectfully dissent. As the majority states, *Frasco* recognizes the distinction between cohabitation which, absent confession, requires an evidentiary hearing and remarriage, which is an easily determined proposition.

I find the "agreement" of the parties does not trump the plain language of section 510(c) of the Dissolution Act (750 ILCS 5/510(c) (West 2002)). I agree the parties stipulated to the language of the provision in the judgment order that provided "[t]he amount of support shall be reviewable" upon petitioner's cohabitation or remarriage. I disagree as to the effect of that language or that it should bar the application of the statute that dictates the effective date of the termination of maintenance due to remarriage.

The "support" referenced in the October 3, 2000, order encompassed an amount of unallocated child support and maintenance. I would find the "reviewable" language (which explicitly refers to reviewing the *amount*) was included by the parties as an agreement to return to court upon one of the listed conditions for the purpose of untangling the amount of support from maintenance. In essence, the parties agreed that at the time of petitioner's remarriage or cohabitation, a hearing would be necessary to specifically allocate that which was previously unallocated. This language does not evidence an agreement to meet again after petitioner's remarriage to review whether

maintenance should continue. The only sensible interpretation of the agreed order is that the parties knew petitioner's remarriage would automatically terminate maintenance and, because of that, the amount of support needed to be reviewed at that time. I would find the trial court erred in terminating maintenance effective as of the date of respondent's petition. In accordance with section 510(c), maintenance should have terminated effective June 27, 2002, the date of petitioner's remarriage. "