No. 3--05-0722
Filed April 17, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| WADE S. THORNTON, | ) | Peoria County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 99--D--375 |
| | ) | |
| ROSIEMARY THORNTON, | ) | |
| | ) | Honorable Stephen Kouri, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the opinion of the court:

The respondent, Rosiemary Thornton, has appealed the order of the circuit court of

Peoria County granting the oral request of her former spouse, Wade S. Thornton, to terminate his

obligation to make maintenance payments to her. Respondent also asks this court to change our

decision in *In re Marriage of Snow*, 322 Ill. App. 3d 953, 750 N.E.2d 1268 (2001), which she

interprets as holding that the filing of a petition is not required prior to a hearing on the

termination of maintenance pursuant to the conjugal cohabitation provision of section 510(c) of

the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/510(c) (West 2004)). She

prays that we reverse *Snow* and find the filing of a petition necessary to maintain an action to

abate maintenance. Finally, respondent has requested that we remand this matter and order the

trial court to enter judgment in her favor on the issues of maintenance and of all other debts and obligations of the petitioner, including past-due mortgage payments owed to her by petitioner as set forth in their marital settlement agreement.

In the original opinion issued in this appeal, we affirmed the trial court on all three issues. *In re Marriage of Thornton*, No. 3--05--0722 (August 9, 2006). We now vacate that Opinion and, for the reasons that follow, we reaffirm our decision in *Snow*, reverse the trial court's order finding the obligation to pay maintenance had abated, and remand the matter for consideration of respondent's requests for extended, increased and permanent maintenance and petitioner's responsibility of compliance with the other debts and obligations he had pursuant to the judgment of dissolution and its included marital settlement agreement.

## BACKGROUND

In June 1999, Wade Thornton petitioned for dissolution of his marriage to the respondent Rosiemary Thornton. The parties reached a settlement agreement, and a judgment for dissolution of their marriage incorporating that agreement was entered on March 19, 2001. By the terms of the settlement agreement, Wade agreed, *inter alia*, to pay maintenance in the amount of $275 per month for 30 months and to pay "one-half (1/2) of the second mortgage on the marital house his portion of which totals $373.50, commencing with the November 2000 payment until such debt is paid in full."

In September 2004, respondent filed a six-count petition for indirect civil contempt and a petition for maintenance, alleging that petitioner had failed to make any of the required maintenance payments and had failed to make payments or comply with obligations as set forth in the settlement agreement. She sought $8,250 in unpaid maintenance, $15,313 in unpaid mortgage payments, statutory interest, relief from her obligation to pay creditors for debts

2

assigned to her husband in the settlement agreement but discharged by him in bankruptcy, execution of the deed quit-claiming the house to her, and payment of attorney fees. She also sought to increase the amount of maintenance and to make it permanent. In December 2004, the trial court entered a finding that Wade had not paid any maintenance and that a past-due balance of $8,250 plus statutory interest remained due. However, the court later reserved that decision and scheduled an evidentiary hearing on Wade's oral claim that maintenance had "automatically terminated due to a person of the opposite sex living congically [sic] with Mrs. Thornton.".

That evidentiary hearing took place on June 7, 2005. No transcript was made of the proceedings, but we do have a "bystander's report" agreed to by the parties and certified by the court to be "a true and correct depiction of the evidence presented at trial." That report establishes that Wade Thornton admitted that he had made none of the agreed-upon payments, but claimed he had no obligation to do so because his brother had moved in with Rosiemary shortly before entry of the judgment of dissolution and was living with her in a conjugal relationship. He called two witnesses who both offered some circumstantial support for his contention that such a relationship existed.

Petitioner's friend, Gary Irby, testified that he saw the brother's car outside respondent's home on "various occasions." Although Mr. Irby did not live in respondent's neighborhood, he claimed to have seen the car outside the house on at least one occasion when he attended a moving sale in the vicinity in February 2004.

Wade's aunt, Viola Thornton, was his second witness. Her only evidence was that she had gone to Rosiemary's home a couple of times and Wade's brother was there and that occasionally the brother would call her and she could tell from her caller ID that he was calling from Rosiemary's home. She testified that this occurred in 2004.

3

Respondent testified that she had allowed the petitioner's brother to move in "out of the goodness of her heart" because "he did not have a place to stay [and] was in essence, homeless." She testified that the brother stayed and slept in the basement and that they led separate lives. She denied that there was at any time any romance or conjugal relationship between them.

No other evidence was presented to the court, and respondent's description of the "relationship" stands undisputed.

On June 23, 2005, the trial court entered an order abating in full all maintenance pursuant to section 510(c) of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/510(c) (West 2002). The trial court made no findings of fact and offered no reasons for abating petitioner's maintenance obligation. The trial court also made no mention in the order of the mortgage payments or any of the other issues raised in the petition for indirect civil contempt. Respondent filed a timely motion for reconsideration asking the court to reverse its prior finding regarding maintenance and to enter an order on petitioner's other debts and obligations. The court denied the motion citing, without explanation, *In re Marriage of Snow*, 322 Ill. App. 3d 953, 750 N.E.2d 1268 (2001). Respondent timely appealed.

ANALYSIS

I. Meaning and Impact of *In re Marriage of Snow*

Respondent has challenged the validity and effectiveness of the trial court's order on the grounds that her former husband had not filed a petition seeking relief from his obligation to pay maintenance. She apparently believes that this court's decision in *In re Marriage of Snow,* 322 Ill. App. 3d 953, 750 N.E.2d 1268 (2001), held that no petition need be filed in order to terminate maintenance on the basis of "conjugal cohabitation," and she has asked us to reverse that decision. We initially address that issue.

4

In *Snow*, as in the instant case, we considered a claim that a continuous conjugal relationship had abated the obligation of the former spouse to pay court-ordered maintenance. The complaining husband filed a petition seeking an order finding the existence of the requisite relationship and relieving him of his maintenance obligation. The trial court granted the husband's petition and abated maintenance effective on the date the petition was filed. The case proceeded to this court on cross-appeals. The wife was unsuccessful in her challenge to the findings (1) that conjugal cohabitation had been proven and (2) that the termination language in the settlement agreement was not sufficient to override the automatic termination prescribed in the statute. The husband's challenge to the date of filing of the petition as the trigger for abatement of the maintenance obligation fared better. We agreed with the relevant reasoning in *In re Marriage of Gray*, 314 Ill. App. 3d 249, 731 N.E.2d 942 (2000), and adopted a portion of its holding stating:

> "Further, we agree with *In re Marriage of Gray* that the triggering period for termination of maintenance is the time the conjugal cohabitation began and not when the petition to terminate maintenance is filed. *Gray*, 314 Ill. App. 3d at 253, 731 N.E.2d at 946. Therefore, we hold that the trial court erred in terminating William's maintenance obligations from the time he filed his petition. Accordingly, we remand this cause for the trial court to determine when Dawn began the cohabitation and to terminate her payments as of that date." *Snow,* 322 Ill. App. 3d at 957, 750 N.E.2d at 1271.

We thus affirmed the issues raised by the wife and reversed that asserted by the husband,

5

remanding for a determination of the proper triggering date for termination. Clearly nothing in our order found that maintenance payments could be discontinued without the filing of a petition and an order of the court.

Similarly in *Gray*, the abatement action was initiated by the husband's filing of a petition to terminate maintenance. *Gray*, 314 Ill. App. 3d at 250-51, 731 N.E.2d at 944. *Gray* differed factually from *Snow* in that the Grays' settlement agreement had a clause providing "in relevant part, that John's obligation to pay maintenance 'terminated on the earliest of the following events: (a) the remarriage of Patricia; or (b) the death of either party; or (c) the cohabitation of Patricia.'" *Gray,* 314 Ill. App. 3d at 250, 731 N.E.2d at 944. The *Gray* court stated its holdings as follows:

> "We therefore hold that the trial court erred in concluding that John's obligation to pay maintenance terminated on the date of filing the petition rather than from the date Patricia began to cohabit with Evans on a resident, continuing, conjugal basis.
>
> We also hold that the *settlement agreement* clearly intended that John could terminate maintenance, without first petitioning the court, from the date Patricia cohabited with Evans. Similar to section 510(c), the settlement agreement does not contain any provision requiring that a petition must first be filed to terminate maintenance or that the obligation to pay ceases from the date of the petition when Patricia cohabits with another." (Emphasis added.) *Gray,* 314 Ill. App. 3d at 253, 731 N.E.2d at 946.

While the *Snow* court adopted the holding in *Gray* that the obligation to pay maintenance

6

terminates from the date cohabitation begins, the court did not deal with a failure to file a petition or hold that such a filing was unnecessary. The instant case does, however, directly raise the issue of whether a spouse who has been ordered by the court to pay maintenance can cease such payments unilaterally without benefit of a petition and a determination that there had, in fact, been "conjugal cohabitation." We believe, contrary to the decision in *Gray*, that such unilateral action is contrary to the Illinois Marriage and Dissolution of Marriage Act and flies in the face of extensive and long-standing family case law.

The *Gray* court derived support for its conclusion that a petition was unnecessary by comparing the language of sections 510(a) and 510(c) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2002)) and finding that 510(a) specifically requires filing a motion and giving notice while 510(c) does not expressly include such a requirement. As did *Gray,* we begin our analysis by comparing those two sections.

Section 510(a) provides in pertinent part:

"Except as otherwise provided in [two irrelevant sections], the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and, with respect to maintenance, only upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a) (West 2002).

Section 510(a) also included additional language relating to modifications of child-support orders that were not pertinent to the issue of maintenance. However, since *Gray* and *Snow* were decided, the legislature has added a subsection (a-5) that sets out a number of factors to be

7

considered, in addition to those set out in section 504(a), when addressing efforts to modify or to terminate maintenance. They speak to modification or termination for reasons of practicality and of need; they do not address the termination factors that are still set out in section 510(c). We do not, therefore, believe that the amendment changes in any significant way the analyses undertaken in *Gray* and *Snow* or in the instant case.

Section 510(c) provides – unchanged and in its entirety:

"Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." 750 ILCS 5/510(c) (West 2002).

We agree with *Gray* that the two sections distinguish between regular or routine modifications and terminations of maintenance (section 510(a)) and the automatic termination of an obligation to continue previously ordered payments set out in section 510(c). We believe, however, that the focus of that difference relates to the timing of the relief and not to the mechanics or procedure for securing it. That is, section 510(a) allows modification only as to installments accruing after the due notice provided by the filing of a motion. By contrast, section 510(c) provides that the <u>obligation</u> to make <u>future</u> maintenance payments is automatically terminated when one of these three particular events occurs. See 750 ILCS 5/510(c) (West 2002). Logic compels us to conclude that section 510(c) creates an exception to section 510(a)'s limitation of relief to installments after the filing of the motion or petition, but

8

does not establish an exemption from the obligation to file a petition in order to conform the court's order to present circumstances.

We draw support for this construction of the two statutory sections from section 511, which provides in pertinent part:

"A judgment of dissolution or of legal separation or of a declaration of invalidity of marriage may be enforced or modified by order of court pursuant to petition.

(a) Any judgment entered within this State may be enforced or modified in the judicial circuit wherein such judgment was entered or last modified by the filing of a petition with notice mailed to the respondent at his last known address or by the issuance of summons to the respondent." 750 ILCS 5/511 (West 2002).

It can thus be seen that any modification or enforcement of the judgment of dissolution entered in the State of Illinois must be initiated by the filing of a petition and notice. Indeed, review of the entirety of section 511 shows that a modification or enforcement of such a judgment no matter where it was entered requires the filing of a petition or motion. Clearly, then, any *change* in the judgment must be made by the court and not as a result of independent action by the parties.

Moreover, *Gray* is quite plainly distinguishable on its facts from *Snow* and from the instant case. The essence of the decision in *Gray* was its determination that the clause in the settlement agreement requiring only cohabitation (without any requirement that it be continuous and conjugal in nature) by the wife was self-actuating and did not, therefore, constitute a change.

9

This would parallel the situation where the judgment provided for termination of child support when the child reaches the age of 18. Such termination is not a change – it is actually directed by the judgment.

The differences, of course, with *Snow* are that (1) there was no such clause in the settlement agreement or otherwise in the judgment of dissolution and no argument to be made that the *judgment* or the settlement agreement incorporated therein can be read as actually requiring the termination without action by the court, and (2) the termination created by section 510(c) requires factual determinations that any cohabitation is on a "resident, continuing, conjugal basis" and when such relationship commenced. Moreover, William Snow actually had filed a petition. Accordingly, when determining the limited issues presented in *Snow*, we adopted only the relevant portions of Gray dealing with the triggering period for termination and the substantive factors used to examine a claim of conjugal cohabitation. See *Snow*, 322 Ill. App. 3d at 957, 750 N.E.2d at 1271.

*Snow* did not hold that a petition was unnecessary to bring the issue of termination of maintenance on the basis of conjugal cohabitation before the court. We, therefore, find the Act requires that a petition must be filed and the requisite findings concerning conjugal cohabitation must be made before a court-imposed obligation to pay maintenance as ordered can be terminated. Thornton filed no such petition. We, therefore, next consider whether the court's order is rendered void by this fact.

By the terms of the order of dissolution, which was entered on March 19, 2001, Wade Thornton was required to pay Rosiemary $275 per month 30 months. The period of maintenance would, therefore, have expired on September 19, 2003. On September 14, 2004, Rosiemary filed (1) her petition for maintenance alleging a complete failure of Wade to pay any maintenance,

10

asserting a change of health and financial circumstances and seeking payment of the previously required past maintenance and extended, increased, and permanent maintenance; and (2) the petition for indirect civil contempt seeking past maintenance and an order requiring Wade to comply with all other debts and obligations pursuant to the judgment of dissolution. At the December 30, 2004, hearing on her petition, the court entered an order finding an arrearage in the amount of $8,250 plus statutory interest for maintenance. No other findings were made at that time. Apparently Wade interposed an *oral* contention that his former wife was cohabiting with his brother and the hearing was continued so the court could take evidence on his claim.

Thus, at the time of the hearing on June 7, 2005, Rosiemary's petition for increased and permanent maintenance was before the court and there was no petition to invoke the court's jurisdiction to consider termination of maintenance on the basis of conjugal cohabitation pursuant to section 510(c). Because such termination requires factual findings that (1) resident, continuing conjugal cohabitation had actually occurred and (2) when it commenced, the termination cannot be had absent action by the court and appropriate modification of the judgment of dissolution.

If Rosiemary had filed no petition, we believe the judgment terminating maintenance would simply be void. However, since the court had initial jurisdiction to consider the issue of maintenance, we find the order was merely voidable. Rosiemary has not specifically sought to void the order; rather she has asked to have the judgment abating the obligation to pay maintenance reversed on the merits.

We accede to that request because (1) she has been declared in public circuit court documents to have conjugally cohabited with a man, (2) that decision was affirmed by this court in a published opinion, (3) the finding of conjugal cohabitation had no proven basis in law or

11

fact, and (4) we believe both fairness and principles of judicial economy require us to consider that judgment of the trial court on its merits.

## II. Section 510(c) Cohabitation.

As previously discussed, the substantive decision at issue in this case is governed by section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/10(a) (West 2004)). To reiterate, that section provides:

> "Unless otherwise agreed by the parties in a written
>
> agreement set forth in the judgment or otherwise approved by the
>
> court, the obligation to pay future maintenance is terminated upon
>
> the death of either party, or the remarriage of the party receiving
>
> maintenance, or if the party receiving maintenance cohabits with
>
> another person on a resident, continuing conjugal basis." 750
>
> ILCS 5/510(c) (West 2004).

The payee spouse seeking termination of maintenance (in this case, Wade Thornton) has the burden of proof. He must prove by the manifest weight of the evidence the existence of a resident, continuing conjugal relationship. To satisfy that burden, he must make a substantial showing that the former spouse is involved in a *de facto* husband and wife relationship with a third party. *In re Marriage of Sunday*, 354 Ill. App. 3d 184, 820 N.E.2d 636 (2004). To demonstrate the existence of a *de facto* husband and wife relationship, while proof of sexual conduct is no longer necessary, something more than merely living under the same roof with a person of the opposite sex is required; lesser involvement by recipient spouse does not require termination of maintenance. *In re Marriage of Lambdin*, 245 Ill. App. 3d 797, 613 N.E.2d 1381 (1993).

12

In *Snow,* which we have now confirmed as the law in this district, the following factors for examining a claim of conjugal cohabitation have been identified: (1) the length of the relationship; (2) the amount of time the couple spends together; (3) the nature of activities engaged in; (4) the interrelation of their personal affairs; (5) whether they vacation together; and (6) whether they spend holidays together. *Snow*, 322 Ill. App. 3d at 956, 750 N.E.2d at 1270.

After a careful reading of the amended bystanders' report agreed to by the parties and certified by the trial judge to be "a true and correct depiction of the evidence presented at trial," we can find no evidence relating to any of the six factors and, consequently, no evidence that there ever was a *de facto* husband and wife relationship between Rosiemary and Wade's brother. With regard to any conjugal aspects of the brother's residence in the house, the only evidence was her testimony. As recited in the amended bystanders' report:

> "She testified that Petitioner's brother stayed and slept in the basement and that she and the brother lead separate lives. She stated that at no time was there any romance or conjugal relationship between her and Petitioner's brother. She testified that the only reason that he moved in was because he did not have a place to stay, in essence was homeless, and she let him stay there out of the goodness of her heart."

That testimony is wholly undisputed.

Petitioner admitted that he had never paid any of the maintenance or mortgage obligations set out in the settlement agreement, claiming respondent's conjugal cohabitation as justification. The only evidence presented by petitioner to prove the six factors required to find a resident, continuing conjugal relationship was (1) his own bald and limited assertion that his

13

brother had moved in with his former wife shortly before the entry of judgment providing for maintenance; (2) the testimony of petitioner's friend, Gary Irby, who stated he had seen the brother's car parked outside Ms. Thornton's home on "various occasions" but at least one time when he had attended a moving sale in the neighborhood in February 2004; and (3) the testimony of petitioner's aunt, Viola Azetta Thornton, who stated that she had gone to respondent's home a couple of times and petitioner's brother was there, and that petitioner's brother had called her from respondent's home phone, something she knew because of her caller ID. She could not give a month, but knew that this had occurred in 2004. None of the three witnesses provided any evidence pertaining to any of the six *Snow* factors.

The sum total of this evidence shows that Rosiemary allowed her former husband's homeless brother to stay in her basement and to occasionally use her phone between March 2001 and February 2004 and that they lived "separate lives" without any romance or conjugal relationship between them. There is no evidence of the amount of time, if any, Rosiemary spends with Wade's brother; the nature of the activities, if any, they engage in together; the interrelation, if any, of their personal or financial affairs; whether they vacation together; or whether they spend holidays together. In short, there is no evidence relating to five of the six factors that are to be used as the basis for determination. Moreover, failing such substantive evidence of resident, continuing conjugal cohabitation, a mere showing that Wade's brother lived in Rosiemary's basement for roughly three years does not prove "a relationship" of any duration – thus failing the first factor as well.

We find that there is no evidence of a resident, continuing conjugal relationship in this case and that there is no basis for termination of maintenance pursuant to section 510(c) of the Act. We, therefore, reverse the order of the circuit court of Peoria County abating petitioner's

14

maintenance obligation and direct the court to compel petitioner to pay respondent the amount it previously found to be due and owing, together with statutory interest, in its order of December 30, 2004.

### III.  Continuing Maintenance

We next consider, to the extent the record permits, Rosiemary's two petitions seeking an increase in the amount of maintenance and that her entitlement to it be made permanent, and other relief required by the judgment of dissolution.  We make the following observations pertinent to this petition.

The record discloses that on September 14, 2004, Rosiemary filed the previously described petition for maintenance and six-count petition for indirect civil contempt.  Only one count of the second petition related to maintenance, The remaining five counts alleged other specific violations by Wade of the judgment of dissolution and the incorporated settlement agreement.  We find no indication that the circuit court has ever substantively addressed or resolved any of those other issues, although the court does appear to have denied both petitions in their entirety in its original order of June 23, 2005, the transcript of the September 6, 2005, hearing on the motion for reconsideration, and the order of September 19, 2005, denying the motion for reconsideration.

As we have previously noted , the 30 months during which respondent was to have been paid maintenance expired on September 19, 2003.  Her new petition for maintenance was not filed until September 14, 2004.  We, therefore, address as a preliminary matter whether this petition was timely filed to invoke the trial court's jurisdiction.  We believe that it was.

The relevant language in the settlement agreement provides:

"The Husband shall pay to the Wife as and for maintenance the

15

sum of Two Hundred and Seventy-five Dollars ($275.00) per month for a total of 30 months, the first payment being due on the first day of the week following the effective date of this Agreement and subsequent payments being due on the first day of each month thereafter. <u>The maintenance shall be reviewed at the end of this period, to determine whether it should continue and, if so, to what extent.</u>" (Emphasis added.)

We look to three cases to assess the jurisdiction of the trial court to address Rosiemary's petition. In *In re Marriage of Tucker*, 223 Ill. App. 3d 671, 672, 585 N.E. 2d 1105 (1992), this court assessed maintenance language that provided:

"[T]he Plaintiff shall pay to the Defendant, as and for maintenance, the sum of Twelve Hundred Dollars ($1,200.00) per month, commencing the first day of the month succeeding the date of this Judgment and continuing at said amount for Seventy-seven (77) consecutive months thereafter for a total of Seventy-eight (78) months or until the Defendant shall die, remarry, or until further Order of this Court, whichever shall first occur."

None of the other language could be construed as providing for review of that maintenance award.

The *Tucker* court held that the parties had clearly and unambiguously limited the duration of maintenance (*Tucker,* 223 Ill. App. 3d at 675, 585 N.E.2d at 1108) but that it did "not clearly preclude modification of the amounts of maintenance and other benefits within the prescribed periods" (*Tucker*, 223 Ill. App. 3d at 677, 585 N.E.2d at 1110). The decision in *Tucker* is

16

clearly distinguishable from the instant case because here the parties have expressly provided for review of maintenance to determine if it should continue and, if so, to what extent.

We next turn to *Rice v. Rice*, 173 Ill. App. 3d 1098, 528 N.E.2d 14 (1988). In that case, involving a provision for rehabilitative maintenance, the judgment granted maintenance for a period of 42 months and did not reserve jurisdiction to review the award at the end of that time. *Rice*, 173 Ill. App. 3d at 1101-02, 528 N.E 2d at 16. The court framed the issue as:

> "What happens when a petition to modify an award of
>
> maintenance, limited in its duration, is filed to extend the duration
>
> of the award when the court has not expressly reserved jurisdiction
>
> to extend the term? In answering this question, we find it is
>
> important to determine whether the petition for modification is
>
> filed during the period set for rehabilitative maintenance or after
>
> the term of rehabilitative maintenance has expired and been
>
> completed." *Rice*, 173 Ill. App. 3d at 1102, 528 N.E.2d at 16-17.

The court held that where there has been no express provision for review of the award, the trial court has jurisdiction to extend the award only if the petition requesting the extension is filed within the identified maintenance period. When it is filed after the term has expired, the court lacks jurisdiction. The *Rice* court also noted that the petition had been filed after payment in full of the maintenance award and after the trial court's jurisdiction to modify the maintenance award had terminated. *Rice,* 173 Ill. App. 3d at 1103, 528 N.E.2d at 17.

Although Rosiemary's petition was filed after the period of maintenance had expired, there was an express provision for review. Moreover, Wade had never made a single maintenance payment to Rosiemary. For these reasons, the forfeiture of the right to seek an

17

extension of the duration of maintenance found in *Rice* has not occurred in the instant case.

Rather, this situation is more closely analogous to that found in this court's decision in *In re Marriage of Rodriguez*, 359 Ill. App. 3d 307, 834 N.E.2d 71 (2005). In that case, the husband did not dispute that the trial court had ordered "reviewable" maintenance. He did, however, claim that his former wife was barred from seeking maintenance by her failure to petition for review within the maintenance period.. This court distinguished *Rice* because there had been no provision for review in that case, and then held:

> "Nevertheless, it is our view that anytime the court provides for maintenance reviewable after a time specified, the court retains jurisdiction to review the maintenance until one or both of the parties petitions for review. Upon review the trial court can consider whether maintenance should continue and if so, whether the amount should be increased or decreased. Until a party petitions for review, the maintenance award shall continue as ordered." *Rodriguez*, 359 Ill. App. 3d at 313, 834 N.E. 2d at 76.

Thus, in the instant case, the trial court retained jurisdiction to review maintenance until Rosiemary filed her petition in September 2004. The trial court has determined by its order of December 30, 2004, that $8,250, plus statutory interest, was due and owing from Wade at the end of the 30 months. Unlike the situation in *Rodriguez*, Rosiemary's award of maintenance was for a period certain (30 months). Consequently, Wade's obligation, as imposed by the judgment of dissolution, ended in September 2003 but is reviewable. Pursuant to section 510(a), discussed previously, the earliest any additional maintenance installments can accrue would be September 2004 when the petition was filed and notice was given.

18

Turning to the issues presented in Rosiemary's petition for maintenance and unreviewed by the trial court, the record discloses that in September 2001, six months after entry of the dissolution judgment in which certain marital obligations and debts were assigned to Wade, he secured a discharge of some of those debts and obligations through bankruptcy. Rosiemary has averred that, as a result of his action, she became obligated for not only the debts assigned to her in the judgment, but also for some or all of those assigned to her former spouse. There is also a suggestion that because of his failure to make requisite payments to her and his creditors she fell behind in her own financial obligations and was required to file for bankruptcy. Her allegations, if proven, could support a finding of a substantial change in circumstances. See *In re Marriage of Letsinger*, 321 Ill. App. 3d 961, 748 N.E.2d 812 (2001). Rosiemary, who is 60 years old, has also alleged that her health has deteriorated and that she can no longer continue the foster parenting which has previously been a substantial element of her support. The record also discloses that she and Wade adopted two of the several foster children they took in and that his child support obligation ended for both upon majority. Rosiemary subsequently adopted a third foster child for whom apparently Wade has no responsibility.

The order totally abating maintenance and those denying the two petitions filed by Rosiemary precluded development of an evidentiary basis for ruling on her request for extended, increased, and permanent maintenance. We note that there has also been no evidence presented (save Wade's admission that he had made no payments of the mortgage), no factual findings and no legal determination of Wade's obligations with regard to other issues raised in the petition for indirect civil contempt and various motions for attorney fees. Accordingly, we remand this matter to the circuit court of Peoria County for the purpose of addressing all of the remaining issues.

19

CONCLUSION

We find that the case of *In re Marriage of Snow* did not hold that a petition was unnecessary to invoke the jurisdiction of the court to terminate maintenance on the basis of conjugal cohabitation pursuant to section 510(c) of the Illinois Marriage and Dissolution of Marriage Act. With that clarification, we confirm that *Snow* remains the law in this district. Further, for the reasons set forth in this pinion, the order of the circuit court abating the maintenance obligation of petitioner, Wade Thornton, on the basis of conjugal cohabitation of his former spouse is reversed on the merits. The order of December 30, 2004, finding a maintenance arrearage is reinstated and that obligation shall be enforced. The remaining issues raised by Rosiemary's petition for Maintenance, petition for indirect civil contempt, and petitions for fees, and not resolved by the trial court, are remanded for further proceedings consistent with this opinion and the legal obligations of the parties.

Reversed and remanded with direction.

CARTER and SCHMIDT, JJ., concur.

20